**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LEMA MOUSILLI,** *Plaintiff,* | § § § | |
| **v.** | § § | **CIVIL CASE NO. 4:25-cv-05642 JURY DEMANDED** |
| **DANIEL MCNARY "MAC" LECKRONE,** *Defendant.* | § § § § | |

**DEFENDANT DANIEL MCNARY LECKRONE'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**COMES NOW, DEFENDANT DANIEL MCNARY LECKRONE,** in the above-entitled and number cause and files his *Second Amended Answer, Affirmative Defenses, and Counterclaims.* All allegations not specifically admitted by this Answer are generally denied.

## I. SUMMARY OF THE ACTION

1. Defendant denies the allegations set forth in paragraph 1 of the Complaint.

2. Defendant denies the allegations set forth in paragraph 2 of the Complaint.

## II. JURISDICTION

3. Defendant responds that paragraph 3 of the Complaint calls for a legal conclusion or presents a question of law to which no response is required.

## III. VENUE

4. Defendant responds that paragraph 4 of the Complaint calls for a legal conclusion or presents a question of law to which no response is required.

## IV. PARTIES

5. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of the Complaint and therefore denies them.



EXHIBIT A

6. Defendant admits the allegations set forth in paragraph 6 of the Complaint.

## V. BACKGROUND FACTS

7. Defendant admits that Lema Mousilli and Feras Mousilli are siblings. Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every remaining allegation set forth in paragraph 7 of the Complaint and therefore denies them.

8. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint and therefore denies them.

9. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint and therefore denies them.

10. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint and therefore denies them.

11. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint and therefore denies them.

12. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint and therefore denies them.

13. Defendant admits he has been associated with L&M. Defendant denies spreading false and defamatory information about Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint and therefore denies them.

14. Defendant denies the allegations set forth in paragraph 14 of the Complaint.

15. Defendant denies the allegations set forth in paragraph 15 of the Complaint.

16. Defendant admits that he received a demand letter from Plaintiff's counsel. Defendant denies each and every remaining allegation set forth in paragraph 16 of the Complaint.

17. Defendant denies the allegations set forth in paragraph 17 of the Complaint.

## VI. CAUSES OF ACTION

### A. COUNT 1 – DEFAMATION

18. Defendant incorporates by reference his responses to the preceding paragraphs. To the extent this paragraph purports to assert any additional factual allegations, Defendant denies them.

19. Defendant denies the allegations set forth in paragraph 19 of the Complaint.

20. Defendant denies the allegations set forth in paragraph 20 of the Complaint.

21. Defendant denies the allegations set forth in paragraph 21 of the Complaint.

22. Defendant denies the allegations set forth in paragraph 22 of the Complaint.

23. Defendant denies the allegations set forth in paragraph 23 of the Complaint.

24. Defendant denies the allegations set forth in paragraph 24 of the Complaint.

25. Defendant denies the allegations set forth in paragraph 25 of the Complaint.

26. Defendant denies the allegations set forth in paragraph 26 of the Complaint.

27. Defendant denies the allegations set forth in paragraph 27 of the Complaint.

28. Defendant denies the allegations set forth in paragraph 28 of the Complaint.

29. Defendant responds that the allegation set forth in paragraph 29 of the Complaint regarding the Texas Defamation Mitigation Act calls for a legal conclusion or presents a question of law to which no response is required. Defendant admits that on November 24, 2025, he received a demand letter dated November 11, 2025. Defendant denies each and every remaining allegation set forth in paragraph 29 of the Complaint.

30. Defendant responds that the allegations set forth in paragraph 30 of the Complaint call for a legal conclusion or present a question of law to which no response is required.

31. Defendant denies the allegations set forth in paragraph 31 of the Complaint.

32. Defendant denies the allegations set forth in paragraph 32 of the Complaint.

### B. COUNT 2- BUSINESS DISPARAGEMENT

33. Defendant incorporates by reference his responses to the preceding paragraphs. To the extent this paragraph purports to assert any additional factual allegations, Defendant denies them.

34. Defendant denies the allegations set forth in paragraph 34 of the Complaint.

35. Defendant denies the allegations set forth in paragraph 35 of the Complaint.

### C. COUNT 3- TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONS

36. Defendant incorporates by reference his responses to the preceding paragraphs. To the extent this paragraph purports to assert any additional factual allegations, Defendant denies them.

37. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37 of the Complaint that "Plaintiff had existing contracts and prospective economic relations with clients" and therefore denies them. Defendant denies each and every remaining allegation set forth in paragraph 37 of the Complaint.

38. Defendant denies the allegations set forth in paragraph 38 of the Complaint.

### D. COUNT 4- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39. Defendant incorporates by reference his responses to the preceding paragraphs. To the extent this paragraph purports to assert any additional factual allegations, Defendant denies them.

40. Defendant denies the allegations set forth in paragraph 40 of the Complaint.

41. Defendant denies the allegations set forth in paragraph 41 of the Complaint.

42. Defendant denies the allegations set forth in paragraph 42 of the Complaint.

## VII. JURY DEMAND

43. Defendant denies that Plaintiff is entitled to the relief requested and otherwise states that no response is required to paragraph 43 of the Complaint, as it does not contain a factual allegation.

## VIII. PRAYER FOR RELIEF

44. To the extent the prayer for relief contained in Plaintiff's Complaint asserts any factual allegations, Defendant denies each and every such allegation. Defendant further denies Plaintiff is entitled to the requested relief therein.

## IX. AFFIRMATIVE DEFENSES

**(A) First Defense – Failure to State a Claim**

45. Plaintiff has failed to state a claim upon which relief can be granted.

**(B) Second Defense – Truth / Substantial Truth**

46. Any alleged statements complained of were true or substantially true.

**(C) Third Defense - Opinion / Non-Actionable Statement**

47. Any alleged statements constitute protected opinion, rhetorical hyperbole, or statements not capable of being proven false.

**(D) Fourth Defense - Lack of Defamatory Meaning**

48. Any alleged statements made are not reasonably capable of defamatory meaning and would not tend to harm Plaintiff's reputation.

**(E) Fifth Defense - Lack of Fault / No Actual Malice**

49. Defendant did not act with negligence, actual malice, or any degree of fault required to impose liability.

**(F) Sixth Defense - No Damages**

50. Plaintiff has not suffered any legally recoverable damages.

**(G) Seventh Defense - First Amendment**

51. Plaintiff's claims are barred or limited by the First Amendment to the United States Constitution and Article I, Section 8 of the Texas Constitution.

**(H) Eighth Defense -Failure to Mitigate**

52. Plaintiff failed to mitigate any alleged damages.

**(I) Ninth Defense – Plaintiff is a Public Person**

53. Plaintiff is a well-known public figure in the Houston, Harris County area. She is active and famous in the large local Arab American community and has offered free legal workshops to the community. Plaintiff has voluntarily engaged in public controversies. She has participated in and been featured in news segments aired on broadcasts by local affiliates of national media outlets related to cases she has handled. Most notably, she has run for Harris County District Judge multiple times[1], including in the spring election prior to which the alleged statement was made.

## X. COUNT I - COUNTERCLAIM FOR DECLARATORY JUDGMENT

54. Defendant/Counter-Plaintiff Daniel McNary Leckrone ("**Counter-Plaintiff**") seeks a declaration of the parties' rights and legal relations pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

55. Plaintiff's claims are predicated, in whole or in substantial part, upon her allegation that Mr. Leckrone falsely accused her of having "stolen money." Further, Plaintiff's claims are based solely in Texas law, both statutory and common.

**A. Factual Basis**

56. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

[1] According to public records, Lema Mousilli's attempts to be elected judge in Harris County, Texas include races in 2022 (as Lema Barazi), 2024, and 2026.

57. Ms. Mousilli alleges that Mr. Leckrone falsely stated that she "stole hundreds of thousands of dollars from the Lloyd & Mousilli law firm" and that she stole "$75,000 from Lloyd & Mousilli, PLLC" (**"L&M"**). Dkt. 1, p. 5, ¶ 14, and p. 6, ¶ 20.

58. Ms. Mousilli contends that the alleged statements are actionable under Texas law.

59. Ms. Mousilli was not a party to the conversation at issue.

60. According to Mr. Leckrone's recollection, Ms. Mousilli mischaracterized that conversation throughout her Complaint.

61. Based on phone records, Mr. Leckrone received two phone calls from Scott Hepford, a former client, on November 26, 2024.

62. At the time he received the phone calls, Mr. Leckrone was in his home state of Oregon.

63. Because Mr. Hepford traveled with some frequency and often called him from the road, Mr. Leckrone does not know where Mr. Hepford was when he made the call.

64. According to phone records, the first call from Mr. Hepford on November 26, 2024, was received at 10:02 A.M. PST and lasted 20 minutes, the second call from Mr. Hepford on November 26, 2024, was received at 10:57 A.M. PST and lasted 27 minutes.

65. At some point during the calls, Mr. Hepford asked Mr. Leckrone why he did not stop working with L&M and go to work with or for Ms. Mousilli at the firm she had just formed.

66. Mr. Leckrone told Mr. Hepford that there were several reasons that he would not consider working for Ms. Mousilli.

67. Among those reasons were the facts that Ms. Mousilli was a junior attorney to him[2] and that he practiced a different type of law than she did.

---

[2] Mr. Leckrone had been in practice for over 33 years at that time.

68. Additionally, for Mr. Leckrone, the fact that Ms. Mousilli had been accused of taking money from L&M weighed against considering a job with her.

69. Mr. Leckrone was aware of the allegation because he had been informed of it by L&M's head of operations.

70. Further, Mr. Leckrone had reviewed the petition filed by L&M in Harris County, Texas District Court alleging that Ms. Mousilli had taken money from L&M. **Exhibit A**, Harris County Petition filed October 18, 2024.

71. The filing of that lawsuit had made L&M's allegation(s) against Ms. Mousilli a matter of public record.

72. Specifically, Ms. Mousilli had been publicly accused of violating the Texas Theft Liability Act, violating the Texas Deceptive Trade Practices Act, breach of contract, and conversion.

73. Based on what he learned in the public filing, Mr. Leckrone told Mr. Hepford that Ms. Mousilli had been accused of taking money from L&M, which was yet another reason that Mr. Leckrone had no interest in working for Ms. Mousilli.

74. At all times relevant to Ms. Mousilli's claims, Mr. Leckrone was domiciled in and residing in the State of Oregon.

75. The telephone calls allegedly giving rise to Ms. Mousilli's claims were received by Mr. Leckrone in Oregon and he remained in Oregon for the duration of the calls.

76. Because Ms. Mousilli has sued Mr. Leckrone over statements he made during a private phone conversation while he was in Oregon, an actual, present, and justiciable controversy exists as to whether Texas law governs Mr. Leckrone's conduct.

**B. Claim for Declaratory Relief**

77. Counter-Plaintiff respectfully requests that the Court enter a declaratory judgment declaring: Texas law is inapplicable to any claims Plaintiff may have arising from the alleged communications.

**C. Necessity of Declaratory Relief**

78. A judicial declaration will determine whether Plaintiff has raised colorable claims under law applicable to the controversy between the parties.

79. Mr. Leckrone has no adequate remedy that will fully resolve the uncertainty as to whether Texas law is applicable to the conduct alleged in the Complaint absent declaratory relief.

80. The requested declarations will resolve discrete legal issues concerning the parties' rights and obligations that are presently in dispute and that are necessary to resolving the claims between the parties.

## XI. BACKGROUND FACTS ON COUNTERCLAIMS

81. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

82. Mr. Leckrone specifically refers the Court to paragraphs 61 through 73, *supra*.

83. The phone conversations at issue followed Mr. Hepford's decision to terminate his relationship with L&M, a firm for which Mr. Leckrone worked on a contract basis.

84. When Ms. Mousilli left L&M, she took with her "[t]he overwhelming majority of L&M's litigation clients." Dkt. 1, ¶ 12.

85. Mr. Leckrone had represented Mr. Hepford for years as a corporate attorney. Mr. Leckrone did not and does not handle litigation matters.

86. During the November 26, 2024 calls, Mr. Leckrone and Mr. Hepford discussed next steps, including whether Mr. Leckrone was willing to work with or for Ms. Mousilli. After Mr. Leckrone explained why he did not want to work with Ms. Mousilli, it was decided that Mr. Leckrone would send Mr. Hepford a copy of his engagement letter for Mr. Hepford's review and consideration in making a final decision as to his representation related to corporate work. Mr. Leckrone sent the engagement letter to Mr. Hepford on November 30, 2024.

87. Ultimately, Mr. Hepford did not elect to retain Mr. Leckrone as a corporate attorney, but Mr. Leckrone was not given a reason at the time.

88. On August 26, 2026, during discovery in this matter, Ms. Mousilli produced copies of text messages that she sent to Mr. Hepford on November 26, 2024. Although Ms. Mousilli has not yet produced the entire text conversation, the text messages received clearly and on their face libel Mr. Leckrone and his ability to practice law.

89. Ms. Mousilli accused Mr. Leckrone of "lying." She called him a "liar." Although she herself is not a corporate attorney, Ms. Mousilli said "you don't want him." She said that Mr. Leckrone "can't think clearly" and "believes whatever he is told." Ms. Mousilli asked why Mr. Hepford "would ever want him at [sic] your attorney." She went on to characterize Mr. Leckrone as an "idiot." She finished off her comments with an abbreviated expletive.

90. Upon information and belief, Ms. Mousilli further explicitly questioned why Mr. Hepford was considering keeping Mr. Leckrone as his attorney "[w]hy would you ever want him at [sic] your attorney."

91. Prior to August 25, 2026, Mr. Leckrone was unaware of Ms. Mousilli's comments, her rancor toward him, or the likely impact of her statements on Mr. Hepford's decision related to continued representation for corporate matters.

## XII. CONDITIONS PRECEDENT

92. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

93. On September 2, 2026, Mr. Leckrone, through counsel, sent a demand for correction, clarification, or retraction in compliance with the Texas Defamation Mitigation Act (**"TDMA"**). TEX. CIV. PRAC. & REM. C. § 73.055. On September 11, 2026, Ms. Mousilli replied unequivocably that she would not correct, clarify, or retract her statements.

94. Because he complied with the TDMA within 90 days of learning of the defamatory statements, Mr. Leckrone is entitled to seek and recover exemplary damages. TEX. CIV. PRAC. & REM. C. § 73.055(C).

## XIII. COUNT II –DEFAMATION & DEFAMATION *PER SE*

95. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

96. By publication of her defamatory statements to Mr. Hepford via text message, Ms. Mousilli libelled Mr. Leckrone.

97. The statements Ms. Mousilli made about him were clearly and deeply defamatory toward Mr. Leckrone.

98. Because he is not a public figure, Mr. Leckrone need only show that her statements were negligent; however, on their face Ms. Mousilli's statements exceed mere negligence and demonstrate actual malice.

99. Ms. Mousilli's statements fall into one of the categories that Texas courts have recognized as being defamatory *per se*. Her statements adversely reflect on Mr. Leckrone's business, trade, or profession.

100. Ms. Mousilli does not practice the same areas of law as Mr. Leckrone and, to the extent that she may dabble in those areas, she does not have his thirty-four years of experience. In fact, according to the Texas Bar, she has not yet been licensed for twenty years. Ms. Mousilli knew or should have known that she does not have sufficient experience in the areas of law practiced by Mr. Leckrone to offer an opinion as to his capability.

101. Ms. Mousilli's statements were false at the time they were made. Ms. Mousilli knew or should have known at the time that each of her statements was untrue. In fact, Ms. Mousilli had in the past consulted with Mr. Leckrone to advise her on case(s) requiring his particular areas of expertise. Given this, she acted with reckless disregard for the truth.

102. Not only has Mr. Leckrone's personal relationship with Mr. Hepford suffered as a result of Ms. Mousilli's libelous statements, but upon information and belief, the statements contributed to the loss of his professional relationship with Mr. Hepford. Mr. Leckrone suffered lost revenue and profits as a direct result of the statements.

103. Additionally, Ms. Mousilli's statements have contributed to a loss of standing in the community for Mr. Leckrone and have been the cause of considerable mental anguish.

104. Because Ms. Mousilli's statements adversely reflect on Mr. Leckrone's business, trade, and / or profession, his general damages are presumed, and no proof of specific damages is required.

105. As a direct result of Ms. Mousilli's libelous statements, Mr. Leckrone has suffered actual damages in an amount to be determined at trial.

## XIV. COUNT III – BUSINESS DISPARAGEMENT

106. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

107. By publication of her defamatory statements to Mr. Hepford via text message, Ms. Mousilli libelled Mr. Leckrone and her statements were specifically disparaging of and contrary to his economic interests.

108. The statements Ms. Mousilli made about him were clearly and deeply defamatory toward Mr. Leckrone. Ms. Mousilli went out of her way to question why Mr. Hepford would want representation from Mr. Leckrone.

109. On their face, Ms. Mousilli's statements libeling Mr. Leckrone demonstrate actual malice. Her statements were repeatedly and emphatically derisive of Ms. Leckrone and his ability to practice law in addition to baselessly attacking his ethics.

110. Ms. Mousilli does not practice the same areas of law as Mr. Leckrone and, to the extent that she may dabble in those areas, she does not have his thirty-four years of experience. In fact, according to the Texas Bar, she has not yet been licensed for twenty years. Ms. Mousilli knew or should have known that she does not have sufficient experience in the areas of law practiced by Mr. Leckrone to offer an opinion as to his capability.

111. Ms. Mousilli's statements were false at the time they were made. Ms. Mousilli knew or should have known at the time that each of her statements was untrue. In fact, Ms. Mousilli had in the past consulted with Mr. Leckrone to advise her on case(s) requiring his particular areas of expertise.

112. Ms. Mousilli's libelous statements appear calculated to harm Mr. Leckrone's professional relationship with Mr. Hepford and, upon information and belief, were the proximate cause of the loss of that professional relationship. Consequently, Mr. Leckrone lost a client for whom he had performed legal work over a span of years.

113. The loss of the professional relationship caused Mr. Leckrone direct pecuniary loss and special damages in the form of lost profits and business opportunities.

114. As a direct result of Ms. Mousilli's libelous statements, Mr. Leckrone has suffered actual damages in an amount to be determined at trial.

## XV. COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

115. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

116. During their phone conversations on November 26, 2024, Mr. Leckrone and Mr. Hepford discussed the possibility of continuing their attorney client relationship for purposes of corporate matters. To that end, it was agreed that Mr. Leckrone would send Mr. Hepford his engagement letter for review and consideration.

117. At the conclusion of Mr. Leckrone's phone conversations with Mr. Hepford on November 26, 2024, there was a reasonable probability that, after review of Mr. Leckrone's engagement letter and further consideration, Mr. Hepford would engage Mr. Leckrone to continue representing him for corporate matters.

118. By publication of her libelous statements to Mr. Hepford via text message, Ms. Mousilli libelled Mr. Leckrone and her statements were specifically disparaging of and overtly opposed to Mr. Hepford continuing his business relationship with Mr. Leckrone. Ms. Mousilli openly questioned why Mr. Hepford wanted Mr. Leckrone to represent him.

119. Upon information and belief, the statements were made with a conscious desire to prevent Mr. Hepford from continuing his relationship with Mr. Leckrone. The clear language of the statements and the import of such language, support the conclusion that Ms. Mousilli knew her

statements were certain or substantially certain to interfere with the continuation of that relationship.

120. Ms. Mousilli's statements were independently tortious as defamation, defamation *per se*, and business disparagement outside of the interference itself.

121. Upon information and belief, Ms. Mousilli's statements were the proximate cause of Mr. Hepford's decision not to continue his professional business relationship with Mr. Leckrone.

122. The loss of the professional relationship caused Mr. Leckrone direct pecuniary loss and damages in the form of lost profits and business opportunities.

123. As a direct result of Ms. Mousilli's libelous statements, Mr. Leckrone has suffered actual damages in an amount to be determined at trial.

## XVI. COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

124. Mr. Leckrone incorporates by reference the preceding paragraphs of this Second Amended Answer and Counterclaims as though fully set forth herein.

125. Ms. Mousilli's libelous statements against Mr. Leckrone were published intentionally and / or recklessly. This is evident from even a casual reading of the text messages. On their face, the statements were calculated to impugn Mr. Leckrone both personally and professionally.

126. Ms. Mousilli's statements were extreme and outrageous. Her disparagement of Mr. Leckrone both personally and professionally was outside of all possible bounds of decency – especially given that Ms. Mousilli is herself a member of the bar and thus held to a higher degree of ethics than the general public in dealing with other members of the bar and certainly in communications with clients.

127. Ms. Mousilli's conduct caused Mr. Leckrone severe emotional distress, including humiliation, anxiety, and mental anguish.

128. No alternative cause of action would provide a remedy for the severe emotional distress caused by Ms. Mousilli's conduct.

129. By reason of her conduct, Ms. Mousilli is liable to Mr. Leckrone for damages in an amount to be determined at trial.

## XVII. PRAYER ON COUNTERCLAIMS

130. WHEREFORE, Counter-Plaintiff Daniel McNary Leckrone respectfully requests that the Court:

**(a)** Enter judgment declaring that Texas law does not govern Mr. Leckrone's actions during the communications at issue.

**(b)** Award Mr. Leckrone all costs recoverable by law;

**(c)** Award reasonable attorney's fees if authorized by applicable law; and,

**(d)** Grant such other and further relief, both general and special, at law or in equity, to which he may show himself to be justly entitled.

## XVIII. GENERAL PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Daniel McNary Leckrone respectfully asks that the Court enter judgment in his favor, deny all relief requested by Plaintiff, award Defendant his costs of court, and grant such other and further relief, both general and special, at law or in equity, to which he may show himself to be justly entitled.

Dated: September 29, 2026.

Respectfully submitted,

By: /s/ *Elizabeth Revere*

ELIZABETH REVERE
State Bar No. 00791513
S.D. Texas Bar No. 18329
**ELIZABETH REVERE, PLLC**
804 Sabine Street
Houston, Texas 77007
Tel: (281) 924-8845
Fax: (832) 201-0584
*service@bethrevere.com*
**ATTORNEY FOR DEFENDANT DANIEL MCNARY LECKRONE**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record, pursuant to the District's ECF service rules on **September 29, 2026, *via electronic filing system*** on the following:

Lloyd E. Kelley
The Kelley Law Firm
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005

/s/ *Elizabeth Revere*
Elizabeth Revere

10/18/2024 4:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 93340803
By: Wanda Chambers
Filed: 10/18/2024 4:23 PM

2024-72783 / Court: 295

**CAUSE NO. ____________**

| | | |
|---|---|---|
| **LLOYD & MOUSILLI, PLLC**<br>*Plaintiff*, | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| | § | |
| **VS.** | § | **HARRIS COUNTY, T E X A S** |
| | § | |
| **LEMA BARAZI, TEXAS NEXUS LAW GROUP AND JPMORGAN CHASE BANK N.A.,**<br>*Defendants.* | § | |
| | § | |
| | § | **___ JUDICIAL DISTRICT** |

**PLAINTIFF LLOYD & MOUSILLI PLLC'S VERIFIED PETITION AND APPLICATION FOR INJUNCTIVE RELIEF**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Plaintiff, Lloyd & Mousilli, PLLC** in the above-styled matter and files this *Plaintiff Lloyd & Mousilli PLLC's Verified Petition and Application for Injunctive Relief* complaining of **Defendants, Lema Barazi, Texas Nexus Law Group and JPMorgan Chase Bank, N.A.** In support thereof, Plaintiff respectfully shows unto the Court the following:

## I. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Discovery Level 3 in accordance with Texas Rule of Civil Procedure 190.4 and requests that the Court enter a discovery control plan order tailored to the circumstances of this suit.

## II. CLAIM FOR RELIEF

2. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff states that it seeks monetary relief over $1,000,000.00 and non-monetary relief. The damages sought are within the jurisdictional limits of this Court.

Unofficial Copy Office of Marilyn Burgess District Clerk

**EXHIBIT A**

## III. PARTIES

3. Plaintiff Lloyd & Mousilli PLLC (**"Lloyd & Mousilli"**) is a private corporation duly formed and existing under the laws of the State of Texas, and having its principal place of business in Houston, Harris County, Texas.

4. Defendant Lema Barazi, an individual, last known to reside at 11910 Louvre Ct, Houston, TX 77082.

5. Defendant Texas Nexus Law Group is a Domestic Limited Liability Company and may be served with process through its registered agent Lema Barazi at 1305 E. Nolana, Suite F, McAllen, TX 78504.

6. Defendant JPMorgan Chase Bank, N.A., (**"Defendant Chase Bank"**), is a foreign financial institution, organized and existing under the laws of the State of New York, with its main office located in New York, New York. Chase Bank does business in the State of Texas and may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## IV. VENUE AND JURISDICTION

7. Pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), venue for this suit is proper in Harris County, Texas because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Harris County, Texas. Plaintiff is requesting injunctive relief in this petition; however, injunctive relief is not the primary relief requested. The venue provisions of Texas Civil Practice and Remedies Code § 65.023, therefore, do not apply.

8. This Court has general subject matter jurisdiction over the lawsuit because it is a court of general jurisdiction and the amount in controversy exceeds this Court's minimum jurisdictional requirements.

Unofficial Copy Office of Marilyn Burgess District Clerk

9. This Court has personal jurisdiction over Defendant Lema Barazi because she resides in Texas. This Court has personal jurisdiction over Defendant Texas Nexus Law Group because Defendant Texas Nexus because it does business in Texas. This Court has specific personal jurisdiction over Defendant Chase Bank because Defendant has sufficient minimum contacts with Texas, has purposely availed itself of the benefits and protection of Texas law, and does a substantial amount of business in Texas such that the Court's exercise of personal jurisdiction accords with due process.

## V. OPERATIVE FACTUAL BACKGROUND

10. Plaintiff Lloyd & Mousilli is a boutique law firm specializing in intellectual property and technology law.

11. Defendant Lema Barazi known to be the sole member and manager of Defendant Texas Nexus Law Group was previously contracted to provide legal services to Lloyd & Mousilli but was terminated on August 28, 2024.

12. During portions of the term of Defendant Barazi's Independent Contractor Agreement with Lloyd & Mousilli, Defendant Barazi was an authorized signatory on Lloyd & Mousilli's Chase Bank Account ending in 1125 ("Account 1125"). However, sole owner and Managing Partner of Lloyd & Mousilli, Feras Mousilli, revoked Defendant Barazi's access via written instructions to Chase Bank on September 6, 2024. *See* Exhibit 1.

13. On October 16, 2024, despite this written revocation, Defendant Chase Bank allowed an unauthorized withdrawal of $75,000 to Defendant Barazi from Account 1125.

14. Immediately upon discovery on October 18, 2024, Managing Partner Feras Mousilli reached out to Defendant Barazi in writing regarding this theft.

Unofficial Copy Office of Marilyn Burgess District Clerk

15. Defendant Barazi admitted in writing to withdrawing the funds despite being fully on notice that she had no authority to do so. *See* Exhibit 2

16. Unless restrained as requested in this petition Defendant will likely withdraw more funds from Account 1125; as she erroneously contends she is owed more than even the funds she has already stolen.

## VI. CAUSES OF ACTION

### A. VIOLATIONS OF THE TEXAS THEFT LIABILITY ACT

17. Plaintiff herein re-alleges each and every fact and allegation set forth above as if fully set forth herein.

18. Plaintiff had a possessory right to the funds in its bank account.

19. On October 16, 2024, Defendant Barazi accessed Plaintiff's bank account and assumed and exercised dominion and control over Plaintiff's funds in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Plaintiff's rights.

20. Defendant Barazi unlawfully misappropriated $75,000.00 U.S. Dollars (Seventy-five thousand) from Plaintiff's bank account with the intent to deprive Plaintiff of the property.

21. Plaintiff sustained damages because of Defendant Barazi's theft.

22. The foregoing acts constitute statutory theft under the Texas Theft Liability Act, Texas Civil Practice & Remedies Code § 134.

23. Because of Defendant Barazi's theft, Lloyd & Mousillii has suffered significant damages, for which Plaintiff seeks its actual and additional damages, to which it is entitled under the statute, as well as court costs and reasonable and necessary attorney's fees.

Unofficial Copy Office of Marilyn Burgess District Clerk

## B. VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

24. Plaintiff herein re-alleges each and every fact and allegation set forth above as if fully set forth herein.

25. Plaintiff is a consumer of Defendant Chase Bank's services, as that term is defined in Texas Business & Commerce Code § 17.45(4).

26. Defendant Chase Bank is an entity that can be sued under the Texas Deceptive Trade Practices Act (**"DTPA"**).

27. Defendant Chase Bank contracted with Plaintiff to hold its funds in its accounts.

28. Defendant Chase Bank directly and/or through its representatives engaged in false, misleading, and/or deceptive acts or practices that Plaintiff relied on to Plaintiff's detriment, including representations that:

(a) It would handle Plaintiff's money and affairs prudently;

(b) Its services were properly managed and conducted;

(c) Its services would be of a particular standard, quality, or grade, when they were not; and

(d) That it would have adequate safety and security of the funds on deposit.

29. Upon information and belief, Defendant Chase Bank committed these actions knowing the falsity, deception, and unfairness of the acts or practices and with the intent of having Plaintiff detrimentally rely on the falsity or deception and/or in detrimental ignorance of the unfairness.

30. Defendant Chase Bank's wrongful conduct is a producing cause of Plaintiff's injuries.

31. Plaintiff seeks recovery of the actual damages found by the trier of fact. Additionally, because Defendant Chase Bank acted knowingly and/or intentionally, Plaintiff is entitled to recover treble economic damages, pursuant to Texas Business & Commerce Code § 17.50(b)(1).

Unofficial Copy Office of Marilyn Burgess District Clerk

32. Upon the trier of fact's finding of actual damages with respect to any of Plaintiff's claims, Plaintiff seeks an award of exemplary damages, pursuant to Texas Civil Practice & Remedies Code § 41.003(a). There is clear and convincing evidence of Defendant Chase Bank's fraud, malice, and/or gross negligence.

33. Because Defendant Chase Bank's conduct was willful and malicious, Plaintiff is also entitled to seek exemplary damages, pursuant to Texas Business & Commerce Code §§ 27.01(c) and/or (d).

## C. BREACH OF CONTRACT

34. Plaintiff herein re-alleges each and every fact and allegation set forth above as if fully set forth herein.

35. Plaintiff entered into a contract with Defendant Chase Bank whereby Plaintiff deposited money with Defendant in specified accounts, and Defendant agreed to (a) safeguard the deposited money; (b) follow Plaintiff's instructions with regard to transfers and withdrawals of the money from the accounts; (c) provide the ability for Plaintiff to access and view account information; and (d) provide statements regarding the accounts.

36. Plaintiff has performed its obligations under its contract with Defendant Chase Bank, and all conditions precedent to performance of the agreements have been met.

37. Defendant Chase Bank has failed and refused to honor its obligations under its contract with Plaintiff. Specifically, Defendant Chase Bank has (a) failed to safeguard the money deposited by Plaintiff into its account; and (b) failed to follow Plaintiff's instructions with regard to transfers and withdrawals of the money from its accounts. These failures were material breaches of the contract between Plaintiff and Defendant Chase Bank.

Unofficial Copy Office of Marilyn Burgess District Clerk

38. Plaintiff has notified Defendant Chase Bank of its breaches of the agreements and given it an opportunity to cure, but Defendant has refused to do so.

39. Plaintiff has been damaged by Defendant Chase Bank's breach of its obligations under its contract with Defendant because Plaintiff has been denied access to and use of the money deposited in its accounts, for which Plaintiff seeks recovery in an amount within the jurisdictional limits of this Court.

**D. CONVERSION**

40. Plaintiff herein re-alleges each and every fact and allegation set forth above as if fully set forth herein.

41. Plaintiff deposited money into an accounts under its name with Defendant Chase Bank. Defendant Chase Bank has no title nor ownership interest in the money, yet it has exercised dominion and control over the money in violation of Plaintiff's rights. Plaintiff seeks recovery of damages for Defendant Chase Bank's conversion of its money in an amount within the jurisdictional limits of this Court. In addition, Plaintiff seeks punitive damages in an amount not to exceed two times the amount of actual damages.

## VII. PLAINTIFF'S INJURIES AND DAMAGES

42. Lloyd & Mousilli has and will continue to be damaged and injured by Defendants unlawful conduct, which threatens to disrupt Lloyd & Mousilli's business operations and will cause loss of customers and loss of goodwill amassed by Lloyd & Mousilli over the years. Defendants' wrongful actions have caused Lloyd & Mousilli damages in an amount within the jurisdictional limits of the court.

Unofficial Copy Office of Marilyn Burgess District Clerk

## VIII. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

43. Plaintiff requests that the court issue a temporary restraining order and a temporary injunction against Defendant Barazi and/or Defendant Chase to prevent imminent and irreparable harm to Plaintiff. Plaintiff further requests that upon final hearing, the court award a permanent injunction against Defendant Barazi. In support of this application for a temporary restraining order, temporary injunction, and permanent injunction (collectively, **"injunctive relief"**), Plaintiff respectfully shows the Court as follows:

44. Plaintiff herein re-alleges and incorporates by reference each and every fact and allegation set forth above as if fully set forth herein. The facts in this petition have been verified by the declaration of Feras Mousilli.

45. Lloyd & Mousilli requires injunctive relief to prevent Defendant Barazi's attempts to undermine the viability of the Lloyd & Mousilli entity by withholding the company's operational funds and illicitly absconding with its financial assets.

46. Lloyd & Mousilli's application for a temporary restraining order and temporary injunction is authorized by TEX. CIV. PRAC. & REM. CODE § 65.011. Lloyd & Mousilli has joined all indispensable parties under TEX. R. CIV. P. 39. This petition is signed and verified by Lloyd & Mousilli's Managing Partner Feras Mousilli.

47. Lloyd & Mousilli is entitled to a temporary restraining order and a temporary injunction because, as set forth in the instant petition, Lloyd & Mousilli has demonstrated the following four grounds for relief: 1) the existence of wrongful acts; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *See Pinebrook Prop. v. Brookhaven Lake*, 77 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. denied).

Unofficial Copy Office of Marilyn Burgess District Clerk

48. Lloyd & Mousilli has alleged a statutory theft claim against Defendant Barazi, and has shown a probable right of recovery and likelihood of success on the merits. Lloyd & Mousilli will suffer imminent, irreparable harm without Court intervention, and there is no adequate remedy at law. An applicant need not prove that it will prevail on the merits at trial but is only required to show a probable right to relief on the merits and a probable injury in the interim. *Sun Oil. Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968).

49. As a direct and proximate result of the Defendant Barazi's wrongful actions as alleged in this petition, Lloyd & Mousilli has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief. Lloyd & Mousilli is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

50. The only adequate, effective, and complete relief to the Plaintiff is to restrain Defendant Barazi's from further engaging in certain proscribed activities, as set forth below. Pursuant to TEX. R. CIV. P. 680 et seq. and TEX. CIV. PRAC. & REM. CODE § 65.001 et seq., and in order to preserve the status quo during the pendency of this action, Lloyd & Mousilli seeks a temporary restraining order, and on hearing, a temporary and permanent injunction, ordering and immediately restraining Defendant, including the Defendant's agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the **"Restrained Parties"**), as follows:

a. Ordering Defendant Barazi to immediately return the $75,000.00 U.S. Dollars (Seventy five thousand) she withdrew from Lloyd & Mousilli's bank account to Lloyd & Mousilli by delivering a cashier's check in the same amount to Lloyd & Mousilli's

Unofficial Copy Office of Marilyn Burgess District Clerk

undersigned legal counsel within 24 hours of being served with the Temporary Restraining Order;

b. Enjoining the Restrained Parties from accessing Lloyd & Mousilli's bank accounts, funds, or financial records by any means;

c. Enjoining the Restrained Parties from withdrawing funds from Lloyd & Mousilli's bank accounts, funds, or any other repository;

d. Enjoining the Restrained Parties from communicating with Lloyd & Mousilli's staff members;

e. Enjoining the Restrained Parties from going to or near, or within 1000 feet of the residences or places of employment or business of any of Lloyd & Mousilli's staff; and

f. Enjoining the Restrained Parties from the destruction or deletion of any documents, evidence or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, including but not limited to all hard drives, backups, archives, and other possible sources of stored metadata or information.

51. The injury to Lloyd & Mousilli is readily apparent and further injury is imminent and irreparable. Such an injury cannot be measured by a certain pecuniary standard or calculated to a dollar amount, therefore Lloyd & Mousilli is without an adequate remedy at law.

52. An ex parte order, without notice to Defendants, is necessary because there is not enough time to give notice to the Defendants, hold a hearing, and issue a restraining order before an irreparable injury, loss, or damage to Plaintiff will occur. Specifically, Defendants Barazi and Texas Nexus Law Group were able to withdraw funds from Plaintiff's Account 1125 with Defendant, Chase, without authorization from Plaintiff and in complete disregard for the instructions Plaintiff gave Chase to not allow Defendants Barazi and Texas Nexus Law Group to

Unofficial Copy Office of Marilyn Burgess District Clerk

withdraw funds from Plaintiff's Account 1125. It is likely, therefore, that Defendants Barazi and Texas Nexus will withdraw more funds from Plaintiff's Account 1125 before notice can be given or a hearing held on Plaintiff's Application for Temporary Restraining Order causing irreparable harm to Plaintiffs.

53. Alternatively, because the injury to Lloyd & Mousilli is significant, immediate, and irreparable, Lloyd & Mousilli requests this Court set its application for a temporary restraining order immediately.

54. Lloyd & Mousilli requests this Court set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendant.

55. Lloyd & Mousilli further asks the Court to set its request for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendant.

## IX. RULE 193.7 NOTICE

56. Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendants are hereby put on actual notice that any documents and items produced in response to discovery requests will be used in pretrial proceedings and at trial and will be deemed authentic unless Defendants make valid objections to authenticity pursuant to this rule.

## X. ATTORNEYS' FEES

57. Defendants' conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retention of the attorneys whose names are subscribed to this petition.

58. Pursuant to Section 134 of the Texas Civil Practice and Remedies Code, Plaintiff is entitled to recover its reasonable attorney's fees from Defendant Barazi in bringing this action for Defendant's violation of the Texas Theft Liability Act. Pursuant to Texas Business & Commerce

Unofficial Copy Office of Marilyn Burgess District Clerk

Code § 27.01(e), Plaintiff is entitled to recover reasonable and necessary attorneys' fees and court costs from Defendant Chase Bank. Plaintiff is also entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d). Additionally, pursuant to Texas Civil Practice and Remedies Code § 38.001(b)(8), Plaintiff is entitled to recover reasonable and necessary attorneys' fees in bringing this action for Defendant Chase Bank's breach of contract.

59. Plaintiff requests all costs and reasonable and necessary attorneys' fees incurred by Plaintiff herein, including all fees necessary in the event of any appeal of this cause, as the Court deems equitable and just, and as otherwise allowed by law.

## XI. JURY DEMAND

59. Plaintiff makes this demand for jury trial in the above-styled and numbered cause in accordance with the Texas Rules of Civil Procedure. Simultaneous with the making of said demand for jury trial, Plaintiff hereby tenders its jury fee to the District Clerk of Harris County, in accordance with the applicable statutes and laws of the State of Texas.

## XII. PRAYER

**WHEREFORE**, Plaintiff Lloyd & Mousilli requests that Defendants be cited to appear and answer, and respectfully prays for the following relief:

a. A temporary restraining order, and upon hearing, a temporary injunction for the relief requested above;

b. Upon final trial, judgment against Defendants for full permanent injunctive relief, and for the full amount of Lloyd & Mousilli's actual and consequential damages on all of its claims;

c. Statutorily enhanced treble damages, as allowed by the DTPA;

Unofficial Copy Office of Marilyn Burgess District Clerk

d. Exemplary damages;

e. Lloyd & Mousilli's reasonable and necessary attorneys' fees in prosecuting its claims through trial and, if necessary, through appeal;

f. Pre-judgment and post-judgment interest as provided by law;

g. Costs of suit; and

h. All other relief to which Lloyd & Mousilli, may show itself entitled, either at law or in equity, general and special, under the facts set forth in its claims.

Unofficial Copy Office of Marilyn Burgess District Clerk

## DECLARATION OF FERAS MOUSILLI

"My name is Feras Mousilli. My date of birth is January 31, 1978, and my business address is 11807 Westheimer Rd., Suite 550, PMB 944; Houston, Texas 77077. I declare under penalty of perjury that the facts stated in this document are within my personal knowledge and are true and correct."

Executed in Istanbul, Turkey on October 18, 2024.

*/s/ Feras Mousilli*
Feras Mousilli

DATED: October 18, 2024

Respectfully submitted,

RUTLEDGE LAW OFFICE, P.C.

*/s/ Richard C. Rutledge*
Richard C. Rutledge
SBN: 17423510
8701 New Trails, Suite 200
The Woodlands, Texas 77381
(281) 528-1535
(281) 205-4682 (Fax)
rickr@rutledgelaw.net

**ATTORNEYS FOR PLAINTIFF LLOYD & MOUSILLI**

Unofficial Copy Office of Marilyn Burgess District Clerk

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rick Rutledge
Bar No. 17423510
rickr@rutledgelaw.net
Envelope ID: 93340803
Filing Code Description: Petition
Filing Description: Plaintiff Lloyd & Mousilli, PLLC's Verified Petition and Application for Injunctive Relief
Status as of 10/18/2024 4:28 PM CST

Associated Case Party: Lloyd & Mousilli, PLLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard C.Rutledge | | rickr@rutledgelaw.net | 10/18/2024 4:23:20 PM | SENT |
| Lindsay Hamner | | rutlawstaff@rutledgelaw.net | 10/18/2024 4:23:20 PM | SENT |
| Airiel Blackie | | admin@rutledgelaw.net | 10/18/2024 4:23:20 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk