**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LEMA MOUSILLI,** *Plaintiff,* | § § § | |
| **v.** | § | **CIVIL CASE NO. 4:25-cv-05642** |
| | § § | |
| **DANIEL MCNARY "MAC" LECKRONE,** *Defendant.* | § § § | **JURY DEMANDED** |

## PLAINTIFF'S MOTION TO DISQUALIFY ELIZABETH REVERE AND ELIZABETH REVERE, PLLC AS COUNSEL FOR DEFENDANT AND FOR PROTECTIVE RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, PLAINTIFF, LEMA MOUSILLI**, and files this Motion to Disqualify Elizabeth Revere and Elizabeth Revere, PLLC as counsel for Defendant Daniel McNary "Mac" Leckrone, and for protective relief regarding Marlene Campbell and the use of Plaintiff's discovery, and in support respectfully shows the Court as follows:

## I. INTRODUCTION

1. Defendant's counsel of record, Elizabeth Revere ("**Ms. Revere**"), is a fact witness in this case. She has said so under oath. She is also, by her own filing, a person "financially interested in the outcome of this litigation." (Dkt. 11 at 1–2.) Plaintiff interviewed and hired her at Lloyd & Mousilli, PLLC ("**L&M**"), where for three years she worked as Plaintiff's briefing attorney, including on matters for Well Cell Global, LLC, the client whose business Defendant solicited while making the statements at issue. She recorded a video tribute thanking Plaintiff and Feras Mousilli for "the job that both of you have done in building Lloyd & Mousilli into the firm that it is." (Ex. C.) In August 2024, acting at Feras Mousilli's direction, she tried to take Plaintiff's

clients by entering unauthorized appearances in Plaintiff's cases and telephoning Plaintiff's clients, the same course Defendant pursued three months later with Well Cell; when the clients refused, she signed three motions to withdraw describing Plaintiff as "the then litigation partner at Lloyd & Mousilli." She then led L&M's litigation practice, working directly for Feras Mousilli, during the November 2024 period in which Defendant told Well Cell's chief executive that Plaintiff had stolen hundreds of thousands of dollars from that firm. In March 2026 she testified, adverse to Plaintiff, that Plaintiff was a partner "in name only," which is the factual premise of Defendant's truth defense here. The Harris County jury that heard Ms. Revere's testimony did *not* believe her: it found the partnership existed the next day. (Ex. B at 51:14–52:1; Ex. D at 2.) Additionally, Ms. Revere is now Of Counsel to Farrell Legal Group, the firm that tried the partnership case against Plaintiff on behalf of Feras Mousilli, to which she has transmitted Plaintiff's discovery production from this case. (Ex. A ¶ 12.)

2. No lawyer can cross-examine herself. Ms. Revere cannot try this case as an advocate while serving as a necessary witness on the contested elements of falsity and fault and on the events of August through November 2024, while holding a personal financial stake in the result, and while serving the firm that represents Plaintiff's adversary in the related litigation. Plaintiff moves under Rules 3.08 and 1.06 of the Texas Disciplinary Rules of Professional Conduct, as adopted by this Court's Local Rules and applied under the federal standard governing disqualification in this Circuit, for an order disqualifying Ms. Revere and her firm, Elizabeth Revere, PLLC.

3. Plaintiff also seeks protective relief regarding Ms. Revere's paralegal, Marlene Campbell ("**Ms. Campbell**"), who was Plaintiff's own senior paralegal, then became Defendant's paralegal at L&M and arranged his calls with Well Cell, and who is a disclosed fact witness in this

case. Ms. Revere insists that Ms. Campbell be copied on all case correspondence and be present on the parties' Rule 37 conferences, and she has told Plaintiff that Ms. Campbell "is not a fact witness to this matter." (Ex. A ¶ 15.) A disclosed witness may not be embedded in the opposing party's litigation team. Plaintiff further asks that discovery produced in this case be used only in this case.

## II. FACTUAL BACKGROUND

### A. Ms. Revere's relationship to Plaintiff and to L&M.

4. Plaintiff interviewed and hired Ms. Revere as a contract attorney for L&M in April 2021. (Ex. A, Mousilli Aff. ¶ 2; Ex. G, Feb. 21, 2025 Aff. of Elizabeth Revere ¶ 3 ("I had an initial phone interview with Lema"); Ex. B, Reporter's Record 5:22–24; 7:6–7; 19:9.) For two to three years she worked primarily with Plaintiff as a briefing attorney on "Lema's cases." (Ex. B at 8:1–4, 8:18–20.) Plaintiff supervised her work, including her work on matters for Well Cell Global, LLC, the client at the center of this case. (Ex. A ¶ 3.)

5. After joining the firm, Ms. Revere recorded a video tribute to Plaintiff and Feras Mousilli, identifying herself as "Litigation Attorney" and stating: "Hi Lema and Feras, Beth here with many thanks and heartfelt congratulations for the job that both of you have done in building Lloyd & Mousilli into the firm that it is." (Ex. C at 1.) Maureen Farrell ("**Ms. Farrell**"), who would later try the partnership case against Plaintiff, appears in the same video as "Litigation Counsel." (*Id.* at 2.) The video was played at the Phase 1 trial in the Partnership Litigation; Ms. Revere confirmed under oath that she recorded it. (Ex. B at 33:3–15; 44:1–13.)

6. In August 2024, when Plaintiff left L&M, Feras Mousilli asked Ms. Revere to take over as head of the firm's litigation department. (Ex. B at 44:23–45:1.) Her title became "Senior attorney," and by February 2025 she described herself under oath as "Senior Counsel over disputes

and litigation for L&M." (*Id.* at 20:11–14; Ex. G ¶ 4.) She testified that from that point she was "working directly for Feras the whole time" the Partnership Litigation was pending, and that she "took over the litigation side of it." (*Id.* at 20:4–10.) She remained in that role until January or early February 2026, when she severed ties with L&M over what she described as her second major fee dispute with the firm, which "started last September," that is, September 2025. (*Id.* at 19:20–20:3; 30:13–25; 52:15–20.)

**B. The concerted effort to take Plaintiff's clients, August through November 2024.**

7. Defendant's defamatory statements to Well Cell were that Plaintiff was terminated from L&M and stole from it. (Dkt. 1 ¶¶ 14, 19–20.) They were made in the course of a concerted effort by Feras Mousilli, Ms. Revere, and Defendant to take Plaintiff's clients and cases after she left L&M, in which each played an active role. Feras Mousilli directed it: he asked Ms. Revere to take over L&M's litigation department and to enter appearances in cases in which Plaintiff had been lead counsel. (Ex. B at 38:21–39:3; 44:23–45:1.) Ms. Revere executed it in August 2024: she entered appearances in state and federal cases in which Plaintiff was lead counsel, *without* the clients' authorization. (*Id.* at 38:21–39:5.) On August 10, 2024, she telephoned Plaintiff's client Alexa Curtis, a defendant in a Western District of Texas case, and "told me that she was taking over my case even though I never gave her permission to do so." (Ex. E, Alexa Curtis Decl. ¶ 4.) Ms. Curtis, who had never spoken to Ms. Revere before, was left "frantic" and without her lawyer's contact information. (*Id.* ¶¶ 4–6.) On August 13 and 14, 2024, Plaintiff demanded in writing that Ms. Revere cease; Ms. Revere responded that Plaintiff would "receive service copies of motions to withdraw as they are filed." (Ex. A ¶ 8.) She then moved to withdraw in each case, and each court permitted her to withdraw. (*Id.*) Under oath, she agreed that "mistakes" were made, that her understanding of a "case split" agreement "wasn't as solid," and that she appeared "in a hurry" on

cases where the client had not authorized her. (Ex. B at 39:4–12; 46:9–17.) Defendant executed the same design three months later with the client that mattered most: on November 26, 2024, the day L&M learned Well Cell had terminated it, he telephoned Well Cell's chief executive, told him Plaintiff had stolen from the firm, and within four days sent Well Cell a competing engagement agreement through his own consultancy, Planay LLC. (Dkt. 1 ¶¶ 14, 19–20; Ex. A ¶ 10, describing LECK-001 through LECK-005 and LECK-010 through LECK-011.) Ms. Campbell, then Defendant's paralegal, arranged those calls. (Ex. A ¶ 6.)

8. In each of those withdrawal motions, filed under her signature on August 18, 20, and 23, 2024, Ms. Revere identified Plaintiff as "the then litigation partner at Lloyd & Mousilli." (Ex. A ¶ 8; Ex. B at 46:20–24.) She confirmed at trial that Plaintiff was referred to as the litigation partner "the entire time" she was at the firm, that the title "was on the website and that's what people called her," and that Feras Mousilli himself referred to Plaintiff that way. (Ex. B at 46:25–47:11.)

**C. Ms. Revere's testimony in the Partnership Litigation.**

9. On March 31, 2026, Ms. Revere testified for Feras Mousilli in Cause No. 2024-72783 in the 295th Judicial District Court of Harris County (the "**Partnership Litigation**"), examined by Ms. Farrell of Farrell Legal Group. (Ex. B at 2, 4.) The core of her direct testimony was an alleged conversation in which Plaintiff supposedly told her that Plaintiff "was a contractor just like I was," and that Plaintiff "was a partner in name only" and "the firm belonged to Feras." (*Id.* at 10:3–11; 51:14–52:1.) She testified that her knowledge of why Plaintiff left the firm came "from discussions with Feras." (*Id.* at 12:12–16.) Thirteen months earlier, on February 21, 2025, she had sworn to the same account in an affidavit filed in that case: that in a telephone call on April 1, 2022, Plaintiff told her she "was only a contractor with L&M" and "was not an actual partner,"

notarized by Allauna Gluski, the L&M paralegal who assisted her August 2024 appearances. (Ex. G ¶¶ 5–8; Ex. F, category E(iv).) The affidavit concedes that her belief that Feras Mousilli was the only owner rests on what she has "since learned . . . from other sources." (Ex. G ¶ 8.) The jury that heard Ms. Revere's testimony did not believe her. On April 1, 2026, the day after she testified, it answered "YES" to the single question submitted, and on May 8, 2026, the court accepted the verdict "that a general partnership was formed between Lema Mousilli . . . and Feras Mousilli known as 'Lloyd & Mousilli, PLLC'." (Ex. D at 1–2.) Her testimony was the only evidence of a purported admission by Plaintiff; the jury's verdict is a finding that it was not credible.

**D. Ms. Revere's roles in this case and in Farrell Legal Group.**

10. Ms. Revere appeared for Defendant on March 9, 2026. (Dkt. 10.) Defendant had forwarded Plaintiff's November 11, 2025 demand letter to her on February 28, 2026, and on April 6, 2026, five days after the verdict, he forwarded Plaintiff's verdict announcement to Ms. Revere and to Megan Weiss, L&M's Head of Operations. (Ex. A ¶ 11, describing Defendant's production at LECK-015 and LECK-122.) On April 2, 2026, one day after the verdict, Ms. Revere filed Defendant's Certificate of Interested Parties and listed herself, individually and by name, as a person "financially interested in the outcome of this litigation." (Dkt. 11 at 1–2.) The certificate gives no explanation of the interest.

11. Ms. Revere is Of Counsel to Farrell Legal Group PC, Ms. Farrell's firm, which represented Feras Mousilli at the Phase 1 trial and continues to represent him in the Partnership Litigation. (Ex. A ¶ 12 and Attachment 1; Ex. B at 2.) Plaintiff's production in this case includes MOU0003 and MOU0004, the real-time text messages between Plaintiff and Scott Hepford during Defendant's November 26, 2024 calls, produced to Defendant on August 25, 2026. On September 28, 2026, Ms. Farrell served a supplemental production on behalf of Feras Mousilli in the

Partnership Litigation containing those same two documents, re-labeled FERAS01788 and FERAS01789. Plaintiff never produced them in the Partnership Litigation, and no one else did; the only route by which they could have reached Ms. Farrell is through Defendant's counsel. (Ex. A ¶ 12 and Attachment 2.)

12. On June 9, 2026, Plaintiff's First Supplemental Initial Disclosures identified Ms. Revere as a fact witness with personal knowledge of "internal Lloyd & Mousilli, PLLC operations and communications during the relevant period; her communications, if any, with Defendant Leckrone regarding Plaintiff; her testimony at the Phase 1 trial in Cause No. 2024-72783; and the bases for the assertion (rejected by the Phase 1 jury) that Plaintiff was not a partner in Lloyd & Mousilli, PLLC." (Ex. F, item 7.) Ms. Revere has never disputed that designation, has never asserted that her testimony would be unnecessary, and has never notified Plaintiff that she intends to withdraw from an advocate's role. On September 24, 2026, she wrote: "if you believe that you [*sic*] reason to disqualify me, either enlighten me or file your motion." (Ex. A ¶ 15.) Asked on September 29 and 30, 2026 whether Defendant opposes this motion, she replied that she "knew nothing about the facts of this case until I learned of it through my client," and that whether Plaintiff was a partner with L&M "has no relevance to the claims and defenses in this matter." (*Id.*)

**E. Marlene Campbell.**

13. Ms. Campbell was Plaintiff's secretary and senior paralegal at L&M from approximately 2021 through early 2024. (Ex. F, item 8; Ex. A ¶ 5.) While testifying at trial, Ms. Revere herself named "Marlene" among the litigation support staff with whom she worked. (Ex. B at 13:5–11.) Ms. Campbell then became paralegal to Defendant at L&M, in which capacity she arranged Defendant's calls, including his calls with Well Cell and Scott Hepford, and she

continued working on Well Cell matters until Well Cell terminated L&M in November 2024, days before the statements at issue. (Ex. A ¶ 6.) Plaintiff disclosed Ms. Campbell as a fact witness on June 9, 2026. (Ex. F, item 8.)

14. Ms. Campbell now works for Ms. Revere as the paralegal on this case, under the name "Mimi Campbell," and has been copied on Ms. Revere's correspondence to Plaintiff since approximately April 2026. (Ex. A ¶ 14.) On September 15, 2026, Ms. Revere wrote that "my paralegal should be copied on all correspondence" and threatened to raise with the Court any failure to copy her. (*Id.* ¶ 15.) On September 24, 2026, after Plaintiff objected that Ms. Campbell is a material witness whom Plaintiff intends to depose, Ms. Revere replied: "I intend to have my paralegal on our discovery call. She is not a fact witness to this matter and had no knowledge of the events prior to suit being filed." (*Id.*) That assertion is contradicted by Plaintiff's disclosures, by Ms. Revere's own testimony that she worked alongside "Marlene" at L&M, and by Ms. Campbell's role as Defendant's paralegal during the events at issue. Plaintiff, who can reach Ms. Campbell only through Defendant's counsel or by subpoena, is thus required to route her communications with opposing counsel through a witness she intends to depose.

## III. ARGUMENT & AUTHORITIES

### A. Governing standard.

15. A motion to disqualify counsel is a substantive motion affecting the rights of the parties and is decided under standards developed under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992); *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). The Court looks first to its Local Rules, which make the Texas Disciplinary Rules of Professional Conduct the minimum standard of practice before it, and also to the ABA Model Rules as the national standard. *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992); *In re Duke Invs.,*

*Ltd.*, 454 B.R. 414, 422 (Bankr. S.D. Tex. 2011). Local rules are not the sole authority, and a party cannot be deprived of counsel on the basis of local rules alone. *Dresser*, 972 F.2d at 543; *U.S. Fire*, 50 F.3d at 1312. The rule of disqualification is not mechanically applied; all facts particular to the case are considered in the context of the relevant ethical criteria and with meticulous deference to the litigants' rights, weighing whether there is a possibility that a specific impropriety will occur and whether the likelihood of public suspicion outweighs the social interests served by counsel's continued participation. *U.S. Fire*, 50 F.3d at 1314 (quoting *Dresser*, 972 F.2d at 544); *United States v. Ryan*, 597 F. Supp. 3d 931, 943 (E.D. La. 2022). The movant bears the burden to show a conflict under the applicable ethical standards and that disqualification is the proper remedy. *Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013); *Ryan*, 597 F. Supp. 3d at 943. Because disqualification motions can be misused as procedural weapons, the Court requires at least a reasonable possibility that some identifiable impropriety actually occurred. *Am. Airlines*, 972 F.2d at 611; *U.S. Fire*, 50 F.3d at 1316. Plaintiff meets that burden on each of the grounds below, and the grounds reinforce one another.

**B. Rule 3.08 bars Ms. Revere from an active role before the tribunal because she is a necessary witness on essential contested facts, and her dual role prejudices Plaintiff.**

16. Rule 3.08(a) provides that a lawyer shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless the testimony relates to an uncontested issue, relates solely to a matter of formality with no substantial opposing evidence expected, relates to the nature and value of legal services rendered in the case, the lawyer is a party appearing pro se, or the lawyer has promptly notified opposing counsel that the lawyer expects to testify and disqualification would work substantial hardship on

the client. Rule 3.08(b) provides that a lawyer shall not continue as an advocate if the lawyer believes the lawyer will be compelled to furnish testimony substantially adverse to the client, absent the client's consent after full disclosure. Rule 3.08(c) provides that a lawyer who could not serve as an advocate under the rule "shall not take an active role before the tribunal in the presentation of the matter." Tex. Disciplinary R. Prof'l Conduct 3.08(a)–(c); *see* Tex. Comm. on Prof'l Ethics, Op. 682 (2018).

17. The comments set the standard for using the rule in a disqualification motion. Comment 4 explains that where the lawyer's testimony concerns a contested matter, combining the roles of advocate and witness "can unfairly prejudice the opposing party," because a witness testifies from personal knowledge while an advocate comments on the evidence of others, and "it may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Comment 10 provides that the rule furnishes guidance in procedural disqualification disputes "where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles," and cautions against calling opposing counsel as a witness unnecessarily. Tex. Disciplinary R. Prof'l Conduct 3.08 cmts. 4, 10. Courts in this District accordingly require the movant to state affirmatively and unequivocally that it will call the lawyer, and to show that the lawyer's testimony is necessary because the lawyer holds knowledge of the disputed facts that other witnesses or records cannot supply. *Duke Invs.*, 454 B.R. at 423–24 (collecting Texas authorities). Plaintiff satisfies each requirement.

18. Plaintiff will call Ms. Revere as a witness at trial and will take her deposition in discovery. (Ex. A ¶ 16.) This is not a witness manufactured for the motion: Plaintiff disclosed Ms. Revere as a fact witness on June 9, 2026, three and a half months before filing (Ex. F, item 7), and

the subjects of her testimony are the subjects on which Ms. Revere has already testified, sworn, written, and recorded.

19. Unlike the lawyer in *Duke*, whose knowledge of a proof of claim was shared with the bank officers who prepared it with him, Ms. Revere is the sole source on Defendant's side of the facts that matter most. 454 B.R. at 424.

20. Defendant pleads truth and substantial truth. (Dkt. 10 ¶ 46.) The core of that defense is that Plaintiff was not a partner and therefore stole what she drew. The only evidence of a purported admission by Plaintiff to that effect is Ms. Revere's account of a telephone call in which Plaintiff supposedly told her she "was a contractor just like I was" and "a partner in name only." (Ex. B at 10:3–11; 51:14–52:1; Ex. G ¶¶ 5–7.) Plaintiff denies it. (Ex. A ¶ 9.) There were two people on that call. If Defendant intends to contest falsity, Ms. Revere is the witness he must call, and Plaintiff is entitled to cross-examine her with her own tribute video crediting Plaintiff with building the firm (Ex. C), her three withdrawal motions calling Plaintiff "the then litigation partner," her admission that Feras Mousilli used the same title (Ex. B at 46:20–47:11), and the verdict of a jury that heard her and did not believe her (Ex. D). No other witness can be examined about what Ms. Revere heard, said, wrote, and recorded. Ms. Revere now says the partnership question "has no relevance to the claims and defenses." (Ex. A ¶ 15.) If so, Defendant's truth defense has nothing under it, because the only theory on which a partner's draw becomes theft is that she was not a partner. Either the question is essential and Ms. Revere is its witness, or it is irrelevant and the pleaded defense fails. Defendant cannot have both.

21. Defendant's statement that Plaintiff was terminated is contradicted by the events of Plaintiff's departure, in which Ms. Revere was a principal actor in the effort to take Plaintiff's clients. Only she can testify to why she entered the unauthorized appearances, what Feras Mousilli

told her about a "case split," why she telephoned Ms. Curtis, and what she meant when she wrote that Plaintiff was "the then litigation partner." (Ex. B at 38:21–41:2; 46:9–47:11; Ex. E.) Her state of mind and her understanding are hers alone.

22. Ms. Revere worked as an attorney on Well Cell matters under Plaintiff's supervision. (Ex. A ¶ 3.) She therefore has personal knowledge of Plaintiff's role as Well Cell's counsel and of the value of that relationship, which bears on Defendant's motive in soliciting Well Cell for Planay LLC on November 26 through 30, 2024, and on Plaintiff's business-disparagement and tortious-interference claims. Beyond Plaintiff herself, whose testimony Defendant will contest, Ms. Revere is the only attorney witness to that work.

23. Plaintiff must prove that Defendant acted at least negligently as to falsity, and seeks exemplary damages on a showing of malice. (Dkt. 1.) Ms. Revere headed L&M's litigation practice and was "working directly for Feras" in November 2024. (Ex. B at 20:4–10.) Feras Mousilli and Megan Weiss also hold knowledge of the firm's internal communications about Plaintiff in that period, and Plaintiff does not contend that Ms. Revere is the exclusive source on this subject. But her own communications with Defendant about Plaintiff, and the information flow reflected in Defendant's forwarding to her of the demand letter and verdict announcement and her transmission of Plaintiff's production to Feras Mousilli's counsel, are matters of her own personal knowledge. (Ex. A ¶¶ 11–12; Ex. G ¶ 8.)

24. These matters are contested, not formalities; they do not concern the value of legal services; Ms. Revere is not a party appearing pro se; and she has never given Plaintiff the prompt notice the fifth exception requires, although comment 7 makes clear that the exception turns on whether the parties could reasonably foresee that the lawyer would be a witness, and Ms. Revere, listed as a witness since June 9, 2026, foresaw it. Her responses have been to invite the motion

and, on September 30, 2026, to assert that she "knew nothing about the facts of this case until I learned of it through my client," a statement her own February 21, 2025 affidavit, her trial testimony, and her August 2024 appearances contradict. (Ex. A ¶ 15; Ex. G ¶¶ 5–8; Ex. B at 38:21–41:2.) Rule 3.08(b) independently applies: the testimony Plaintiff will elicit from her regarding the August 2024 appearances, her sworn statements that Plaintiff was the firm's litigation partner, her tribute video, and Feras Mousilli's use of the partner title is substantially adverse to Defendant's truth defense. Under Rule 3.08(c), she may not take an active role before this tribunal in the presentation of the matter.

25. Comment 10 asks whether the movant is prejudiced, and *U.S. Fire* holds that where a lawyer's testimony may prejudice only her own client, the opponent has no say. 50 F.3d at 1315. This case is the converse. Plaintiff must impeach opposing counsel before the jury with counsel's own prior statements and with a verdict that rejected counsel's sworn account, and then listen to that same counsel argue her own credibility in closing. The jury will be unable to tell whether Ms. Revere's statements about the August 2024 events, the tribute video, or the alleged admission are proof or argument, which is exactly the confusion comment 4 identifies. And Plaintiff must communicate with opposing counsel through a second witness, Ms. Campbell, whom counsel has declared not to be a witness at all. *U.S. Fire* reversed the disqualification of the non-testifying members of a large firm whose client had consented. 50 F.3d at 1313–17. Here, Ms. Revere is the only lawyer who has appeared for Defendant (Dkt. 10), there are no non-testifying members of her firm to protect, and her interests, as shown below, are not aligned with Defendant's alone. The identifiable improprieties are present now: continued service as advocate after notice of witness status; representation while financially interested and affiliated with the adversary's firm; and embedding a disclosed witness in the litigation team.

**C. Ms. Revere's personal interests and firm affiliation independently disqualify her under Rule 1.06.**

26. Rule 1.06(b)(2) prohibits a lawyer from representing a person if the representation "reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests," unless the lawyer reasonably believes the representation will not be materially affected and the client consents after full disclosure. Tex. Disciplinary R. Prof'l Conduct 1.06(b)(2), (c). Comment 5 explains why: "If the probity of a lawyer's own conduct in a transaction is in question, it may be difficult for the lawyer to give a client detached advice." *Id.* cmt. 5. Opposing counsel may raise the question where the conflict calls in question the fair administration of justice. *Id.* cmt. 17. Ms. Revere has told this Court that she is financially interested in the outcome of this case. (Dkt. 11 at 2.) She was locked in a fee dispute with L&M, the firm whose finances and partnership structure are at the center of this case, from September 2025 until she severed ties in early 2026. (Ex. B at 30:13–25.) Her own August 2024 conduct in the effort to take Plaintiff's clients, and her own sworn testimony that a jury did not believe, are subjects on which Plaintiff will examine her; a lawyer who was herself an actor in the scheme the case concerns has a personal stake in how the jury views that scheme. And her law firm's interests now include those of Farrell Legal Group, whose client, Feras Mousilli, is Plaintiff's adversary in the Partnership Litigation and the source of the partnership narrative Defendant repeats here. (Ex. A ¶ 12; Ex. G ¶ 8.)

27. A lawyer whose personal financial stake, personal conduct, personal credibility, and firm loyalties are all in play cannot give Defendant the undivided loyalty and independent judgment the rule requires. Rule 3.08(c) alone would bar her from an active role before the tribunal while leaving her free to prepare the case; Rule 1.06 reaches the whole representation. The transfer

of Plaintiff's production to Feras Mousilli's counsel shows why: discovery obtained from Plaintiff in this case is being deployed for the benefit of a nonparty whose interests Ms. Revere's firm serves. Defendant's consent, if obtained, cannot cure the prejudice to Plaintiff or the impairment of the proceeding. Under the *Dresser* factors this is not a generalized appearance of impropriety but a specific one that has already occurred: Plaintiff's own discovery is in the hands of her adversary in another court, delivered through Defendant's counsel. 972 F.2d at 544.

**D. Protective relief is required as to Ms. Campbell and as to Plaintiff's discovery.**

28. Rule 5.03(a) requires a lawyer with direct supervisory authority over a nonlawyer to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer," and comment 1 identifies the obligation not to disclose information relating to a representation as the principal concern. Tex. Disciplinary R. Prof'l Conduct 5.03(a) & cmt. 1. Ms. Campbell was Plaintiff's senior paralegal and worked on Well Cell matters through November 2024. She is a disclosed fact witness with percipient knowledge of the calls Defendant placed to Well Cell. She is now the person through whom Defendant's counsel insists all case correspondence flow, and whom Defendant's counsel insists on placing in the parties' discovery conferences over Plaintiff's objection, while representing to Plaintiff that the witness "is not a fact witness." (Ex. A ¶ 15.) On September 30, 2026, she addressed her correspondence concerning this very motion to Ms. Campbell as a recipient. (*Id.*)

29. The comment to Rule 5.03 makes the supervising lawyer responsible for instructing nonlawyer assistants "particularly regarding the obligation not to disclose information relating to representation of the client." Tex. Disciplinary R. Prof'l Conduct 5.03 cmt. 1. Ms. Revere has done the opposite: she has placed a witness who worked for Plaintiff and then for Defendant at the center of her communications with Plaintiff, and has disclaimed the witness's knowledge in writing. The

Court should order that (i) Ms. Campbell be screened from any participation in this matter; (ii) she not attend or participate in any conference, deposition, or hearing in this case other than as a witness; (iii) Defendant's counsel confirm in writing the date and terms of the screen; and (iv) neither Defendant nor his counsel communicate with Ms. Campbell about the substance of her anticipated testimony except as permitted for any other nonparty witness. Rule 26(c)(1) authorizes such an order on a showing of good cause, and the Court's inherent authority over the attorneys before it independently supports it.

30. The same good cause supports an order under Rule 26(c)(1) that documents and information produced by Plaintiff in this action be used solely for the prosecution and defense of this action and not disclosed to or used by any person for the purposes of any other proceeding, including the Partnership Litigation. Plaintiff's MOU0003 and MOU0004 are already in Feras Mousilli's production in the Partnership Litigation as FERAS01788 and FERAS01789, delivered there through Defendant's counsel. (Ex. A ¶ 12.) Absent an order, every further document Plaintiff produces here will be produced, in effect, to Feras Mousilli.

**E. The motion is timely and the balance of interests favors disqualification.**

31. Plaintiff did not sit on this motion. Ms. Revere appeared on March 9, 2026. Seven weeks later, on April 30, 2026, she wrote that Defendant "agrees to a public apology as proposed" and asked Plaintiff's counsel to "send over whatever other details we should discuss," and on May 1 she added, "I know we both want to resolve this as soon as possible." (Ex. A ¶ 13.) Plaintiff took counsel at her word, prepared the settlement agreement, stipulation of dismissal, and supporting documents, and refrained from motion practice directed at counsel while the case was, by Defendant's representation, about to end. On July 31, 2026, Ms. Revere replied: "I have reviewed

your proposal with Mr. Leckrone. No thank you." (*Id.*) These communications are offered not to prove liability but to explain the timing of this motion, a purpose Rule 408(b) permits.

32. The remaining predicates matured after that. The reporter's record of Ms. Revere's testimony was certified June 14, 2026. (Ex. B at 54.) Ms. Revere's demand that Ms. Campbell be copied on all correspondence came September 15, 2026; her insistence that Ms. Campbell sit in on discovery conferences, coupled with her assertion that Ms. Campbell is not a witness, came September 24, 2026; Feras Mousilli's supplemental production of Plaintiff's documents in the Partnership Litigation came September 28, 2026; and Plaintiff learned of Ms. Revere's Of Counsel affiliation with Farrell Legal Group on September 29, 2026. (Ex. A ¶¶ 12, 14–15.) Plaintiff disclosed Ms. Revere as a witness on June 9, 2026, giving her every opportunity to address her status voluntarily; she did not. Discovery does not close until January 15, 2027, the dispositive-motion deadline is February 16, 2027, and trial is set for June 28, 2027 (Dkt. 15 ¶¶ 3, 4, 7), leaving Defendant ample time to retain substitute counsel.

33. The prejudice to Plaintiff from Ms. Revere's continued dual role is concrete. Plaintiff must depose and cross-examine opposing counsel. Plaintiff must communicate with opposing counsel through a witness. Plaintiff's former supervisee is deploying against her the knowledge acquired in that role, and Plaintiff's discovery is being routed to her adversary in another court. And the jury will be asked to evaluate the credibility of a witness who is also arguing the case. Defendant, by contrast, suffers only the ordinary burden of retaining new counsel in a case that is nine months from trial, a burden Defendant created by retaining as trial counsel a lawyer who had already testified against Plaintiff on the central issue.

## IV. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that the Court enter an order (1) disqualifying Ms. Revere and her firm, Elizabeth Revere, PLLC, from further representation of Defendant in this action; (2) directing Defendant to cause substitute counsel to appear within a period the Court deems reasonable; (3) ordering that Ms. Campbell be screened from participation in this matter, that she not attend or participate in any conference, deposition, or hearing except as a witness, and that Defendant's counsel confirm the screen in writing; (4) prohibiting Defendant and his counsel from communicating with Ms. Campbell regarding the substance of her anticipated testimony except as permitted for any nonparty witness; (5) ordering that documents and information produced by Plaintiff in this action be used solely for this action and not disclosed to or used by any person for the purposes of any other proceeding; and (6) granting Plaintiff such other and further relief, at law or in equity, to which she may be justly entitled.

DATE: September 30, 2026

Respectfully submitted,

*/s/ Lloyd E. Kelley*

LLOYD E. KELLEY
Attorney-in-charge
Texas State Bar No. 11203180
SDTX Federal ID No. 13497
**THE KELLEY LAW FIRM**
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
kelley@lloydekelley.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

Lema Mousilli

Texas State Bar No. 24056016
SDTX Federal ID No. 1358290
**MOUSILLI LAW, PLLC**
11807 Westheimer Road
Suite 550, PMB 624
Houston, TX 77077
Tel: (281) 305-9313
*lema@mousillilaw.com*
*service@mousillilaw.com*

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), I certify that on September 29 and 30, 2026, I conferred by email with Ms. Revere, counsel for Defendant, regarding the relief requested in this motion, identifying the rules invoked and the grounds. Ms. Revere disputed the grounds, declined to withdraw, and did not state that Defendant is unopposed. The motion is opposed.

*/s/ Lema Mousilli*
Lema Mousilli

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure and this District's electronic filing rules.

*/s/ Lema Mousilli*
Lema Mousilli