**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LEMA MOUSILLI,** *Plaintiff,* | § § § | |
| **v.** | § | **CIVIL CASE NO. 4:25-cv-05642** |
| | § | |
| **DANIEL MCNARY “MAC” LECKRONE,** *Defendant.* | § § § | **JURY DEMANDED** |

---

**PLAINTIFF’S REPLY IN SUPPORT OF HER EMERGENCY APPLICATION AND AMENDED REQUEST FOR INTERIM RELIEF**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, PLAINTIFF, LEMA MOUSILLI**, and files this *Reply in Support of Her Emergency Application and Amended Request for Interim Relief* (Dkts. 41, 44), in reply to Defendant’s Response (Dkt. 46), and respectfully shows the Court as follows:

## I. SUMMARY

1. Defendant’s Response does not explain why Plaintiff’s tax forms are relevant. It also does not explain why records of her compensation, profit share, benefits, and fee splits going back to 2019 are relevant. Its relevance argument comes down to one question: whether L&M paid Plaintiff before the October 16, 2024 withdrawal. (Dkt. 46 ¶¶ 10, 35.) That question does not reach the records the subpoena demands. As for how the records will be used, Defendant offers to treat them as “confidential,” and his own exhibit

shows he will not agree to terms that would give that word any meaning. The Court should grant the relief requested in the Amended Request. (Dkt. 44 ¶ 10.)

## II. ARGUMENT

### A. The Response Does Not Address Plaintiff's Tax Documents

2. Request No. 2 demands every Form W-2, W-4, 1099, and Schedule K-1 issued to or for Plaintiff since 2019, along with every corrected or amended version. (Dkt. 41-1 at 7.) Plaintiff objected to that request by name. (Dkt. 41 ¶ 20(b); Dkt. 41-2 at 5.) The Response never mentions tax forms. Defendant's theory is about what Lloyd & Mousilli, PLLC ("**L&M**") paid and when (Dkt. 46 ¶¶ 10, 31), and L&M has already produced an index of payments (Dkt. 44 ¶ 6; Dkt. 44-5). The tax forms add only Plaintiff's tax information. Rule 26(b)(2)(C)(i) requires the Court to limit discovery that is unreasonably cumulative or duplicative.

### B. Plaintiff's Compensation Does Not Bear on Any Claim or Defense

3. Plaintiff alleges that Defendant told the client that she "stole hundreds of thousands of dollars from the Lloyd & Mousilli law firm" and, in a later call, that she stole $75,000. (Dkt. 1 ¶¶ 14, 20.) He stated those things as fact. Defendant now says he told the client only that Plaintiff had been accused of taking money. (Dkt. 45 at 2–3.) The Response goes a step further and recasts the statements as statements that Plaintiff "had taken money from L&M." (Dkt. 46 ¶ 10.) Yet Defendant's own section of the parties' joint letter, filed the day before, described them as statements that Plaintiff "stole." (Dkt. 45 at 2.) Records of what L&M paid Plaintiff show what she was paid. They say nothing about whether she stole anything.

4. Defendant's own version leads to the same place. He has sworn that his statements "were based on allegations contained in litigation filed by L&M" and that "[m]y defense of truth is that my statements were speaking of and based on the allegations L&M asserted against Lema Mousilli in that litigation, not on any personal knowledge arising from Ms. Mousilli's position at or professional relationship with L&M." (Dkt. 29-2 ¶ 8.) Asked to "[a]dmit that any information You had regarding alleged theft by Plaintiff Lema Mousilli came to You from a third party, rather than from Your own direct personal knowledge," he responded: "Deny, the allegation of taking money from Lloyd & Mousilli was public record." (Def.'s Resp. to Pl.'s First Req. for Admis. No. 13 (June 15, 2026).) If his defense is that an accusation existed, the petition he produced answers it. (LECK-016 through LECK-030.) Plaintiff's payroll and tax records have nothing to do with it.

5. Defendant responds that his source "goes to fault" and that falsity "turns on what actually happened." (Dkt. 46 ¶ 33.) The records still do not reach the question. Whether Plaintiff stole $75,000 depends on whether she was entitled to make the withdrawal that her disclosures describe as a "partnership withdrawal." (Dkt. 22-6 at 4.) That is a question about the partnership between Plaintiff and Feras Mousilli, and it is being litigated in the Partnership Litigation. (Dkt. 41 ¶ 7; Dkt. 41-3 ¶ 2.) What L&M paid Plaintiff in any year sheds no light on it.

6. Defendant's remaining argument rests on the text message he quotes. (Dkt. 46 ¶ 13.) The message reads: "Tell him I hadn't been paid in over a year and I took 75k." The messages right after it read: "I am a partner," "The firm website says Partner," and "My emails say partner." (MOU0003; Dkt. 28-3 at 1.) The message is dated November 26,

2024 and refers to a period of "over a year." (*Id.*) At most, it concerns the period just before November 2024. Yet the payment index L&M produced goes back to 2019, and the Forms 1099 go back to 2020. (Dkt. 44 ¶ 6.) Nothing from 2019 through 2022 falls within any period the message describes, and Defendant gives no other reason for those years. He picked the January 1, 2023 start date himself because "[t]hat period covers the time in which Plaintiff has said she had not been paid." (Dkt. 41-2 at 4.) The message also does not make tax forms, benefits records, or fee-split and origination schedules that identify L&M's clients relevant. (Requests Nos. 2, 5, and 6.) A text about whether Plaintiff had been paid does not open every record of every payment L&M made to her over six years.

7. The records do not bear on damages either. Defendant argues that what Plaintiff earned at L&M "before the statements bears on what she claims to have lost after them." (Dkt. 46 ¶ 32.) By mid-2024, Plaintiff had stepped back from L&M's day-to-day practice and was practicing through her own firm, and most of L&M's litigation clients, including the client Defendant spoke with, chose to stay with her. (Dkt. 28 ¶¶ 1, 3.) A loss caused by the statements is a loss to Plaintiff's own practice, and it is measured by that practice's business. What L&M paid her in earlier years does not measure it. Defendant himself objected to producing his own L&M compensation records because, in his words, such records "do not bear on whether the alleged statements were made, whether they were false, or whether Plaintiff suffered damages." (Def.'s Resp. to Pl.'s Req. for Produc. No. 7 (June 15, 2026); Dkt. 41 ¶ 23.) The same is true of Plaintiff's records.

**C. Defendant's Offer of "Confidential" Treatment Would Not Prevent the Use Plaintiff Has Identified**

8. Defendant asks that any interim order "provide only that L&M's production be treated as confidential pending entry of a protective order." (Dkt. 46 at 17.) No order defines "confidential," and Defendant's own exhibit shows what his version would cover. His September 18 draft governed documents "produced by any party to this action." (Dkt. 41 ¶ 22.) On November 17, he agreed for the first time to Plaintiff's revision extending it to non-party productions. (Dkt. 46-1 at 1.) In the same email he wrote: "I cannot agree to the provisions concerning Ms. Campbell and Cause No. 2024-72783 (paragraphs C.3, C.11, and C.12)." (*Id.*) He also changed the interim treatment of non-party productions "from Attorneys' Eyes Only to Confidential." (*Id.*) The protection Defendant offers would not keep these records out of the Partnership Litigation, and that is the use Plaintiff has identified.

9. The same exhibit answers Defendant's claim that Plaintiff's delay is the reason no protective order exists. (Dkt. 46 ¶¶ 16, 45.) Defendant has never moved for one, although he "does not oppose entry of an appropriate protective order." (Dkt. 29 ¶ 4.) The draft he faults Plaintiff for not signing would not have covered L&M's production. And on November 13, the day L&M produced (Dkt. 44-2 at 3), Defendant offered confidential treatment only "as soon as Plaintiff agrees to that order." (Dkt. 41-2 at 4.)

10. The Response confirms that Defendant intends the very use Plaintiff is concerned about. He objects that Plaintiff's terms would bar him "from discussing L&M's own records with L&M," and he says a party should be able to ask "the non-party that

produced the records about them." (Dkt. 46 ¶ 46.) He says the author-and-recipient provision in his draft "exists for exactly this situation." (*Id.*) Feras Mousilli, Plaintiff's adversary in the Partnership Litigation, holds L&M's records. (Dkt. 41-3 ¶ 4.) Megan Weiss signed L&M's acceptance of service and its records certification. (Dkt. 44-3 at 2; Dkt. 44-4.) Asked to "[a]dmit that You learned of the Well Cell Termination from Megan Weiss," Defendant responded: "Admit." (Def.'s Resp. to Pl.'s Second Req. for Admis. No. 130 (Oct. 14, 2026).) Defendant's counsel has already shared Plaintiff's production in this case with Feras Mousilli's counsel, and those pages then appeared in his production in the Partnership Litigation. (Dkt. 29-1 ¶ 8; Dkt. 29-2 ¶ 4; Dkt. 22 ¶ 11.) These facts are specific, and they are in the record. (*Contra* Dkt. 46 ¶¶ 25–27.)

11. How the production happened points the same way. Defendant's Notice, dated November 12, said that L&M "has agreed to accept service of the subpoena." (Dkt. 41-1 at 1.) Ms. Weiss did not sign the written acceptance until November 13. (Dkt. 44-3 at 2.) L&M produced that same day, three weeks before the December 4 compliance date and before Plaintiff could get a ruling. (Dkt. 44-2 at 3; Dkt. 44-5; Dkt. 41-1 at 3.) Defendant has never said who at L&M agreed to accept service before the Notice went out, or whom his counsel dealt with to arrange it. (*See* Dkt. 46 ¶¶ 14–15.) The records went to counsel who has already shared Plaintiff's production with Feras Mousilli's counsel (Dkt. 29-1 ¶ 8) and who now wants to discuss these records with L&M (Dkt. 46 ¶ 46). Rule 26(c)(1) allows the Court, for good cause, to protect a party from annoyance, embarrassment, and oppression, and to set the terms on which discovery may be disclosed. Plaintiff's compensation and tax records were pulled together by her adversary's side of L&M and

delivered to Defendant's counsel before Plaintiff could be heard. That is the kind of disclosure the rule addresses.

12. Defendant also argues that restrictions would not keep the records from Feras Mousilli, who "already has them." (Dkt. 46 ¶¶ 21–22.) Plaintiff's concern is what happens once his side of L&M selects the records and sends them out. At that point they are evidence that can move between this case and the Partnership Litigation, where a Special Master handles all discovery matters. (Dkt. 41-3 ¶ 2.) One page shows the problem. L&M0015 was certified as a true and correct copy, yet it arrived with message content blacked out and no description of what was withheld. (Dkt. 44 ¶ 7; Dkt. 44-4.)

**D. L&M Has Produced Again, and Defendant Has Not Served It**

13. The Response states that L&M "has answered the subpoena" and that no further production is in prospect. (Dkt. 46 ¶ 38.) It also states that "L&M has produced the page unredacted, and Mr. Leckrone will again supplement his responses with what L&M provides." (*Id.* ¶ 17; *see id.* ¶ 9.) Defendant's counsel asked L&M for that page on November 17. (Dkt. 44-7 at 1.) So L&M has made a second production to Defendant's counsel since Plaintiff filed her Application, and Defendant has not served it. The Response does not say when either production reached counsel's office. (Dkt. 46 ¶¶ 17–18, 44.) The Amended Request asks that L&M make no further production pending a ruling. (Dkt. 44 ¶ 10(a).) Defendant's own Response shows why that request is needed.

**E. The Court Has Authority to Grant the Relief Requested**

14. Defendant argues that Rule 45(e)(2)(B) allows sequestration only of material claimed as privileged. (Dkt. 46 ¶ 39.) Plaintiff does not rely on that rule. She relies on Rule

26(c)(1), which permits the Court, for good cause, to forbid disclosure or specify the terms on which it occurs. (Dkt. 41 ¶ 19.) Defendant agrees that Rule 26(c)(1) "allows the Court, for good cause, to limit how discovery is used and disclosed." (Dkt. 46 ¶ 24.) An order that the documents be held and not used while the Court decides Plaintiff's objections is that kind of limit.

15. The requested certification answers a question Defendant has refused to answer. Plaintiff asked Defendant's counsel to identify everyone other than counsel of record who had received any part of the production, and she identified no one. (Dkt. 44 at 7.) Defendant now says his counsel may review the evidence with him and that any concern about Ms. Campbell belongs to the Motion to Disqualify. (Dkt. 46 ¶ 40.) Neither point explains why he will not say who has the records. Service of the order on Ms. Farrell (*id.* ¶ 42) gives notice to the lawyer who has already received Plaintiff's production from Defendant's counsel once. (Dkt. 29-1 ¶ 8.)

## III. PRAYER

Plaintiff respectfully requests that the Court grant her Emergency Application (Dkt. 41), as amended (Dkt. 44), and enter the order submitted with the Amended Request (Dkt. 44-8). Plaintiff continues to reserve her request for reasonable expenses, including attorney's fees, and for sanctions. Plaintiff's counsel can be available for a conference at any time the Court sets. Plaintiff further requests such other and further relief to which she may show herself justly entitled.

DATE: November 19, 2026

Respectfully submitted,

*/s/ Lloyd E. Kelley*
LLOYD E. KELLEY
Attorney-in-charge
Texas State Bar No. 11203180
SDTX Federal ID No. 13497
**THE KELLEY LAW FIRM**
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973
*kelley@lloydekelley.com*

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

Lema Mousilli
Texas State Bar No. 24056016
SDTX Federal ID No. 1358290
**MOUSILLI LAW, PLLC**
11807 Westheimer Road
Suite 550, PMB 624
Houston, TX 77077
Tel: (281) 305-9313
*lema@mousillilaw.com*
*service@mousillilaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2026, a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure and this District's electronic filing rules.

/s/ Lema Mousilli
Lema Mousilli

**CERTIFICATE OF COMPLIANCE**

I certify that this reply contains 2,165 words, including headings and footnotes, and excluding the case caption, title, signature blocks, and certificates, in compliance with Section 5(d)(4)(ii) of Judge Ho's Court Procedures. I relied on the word-count function of Microsoft Word to calculate the word count.

/s/ Lema Mousilli
Lema Mousilli